# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

DANIEL WINE,
    Plaintiff,

v.

SCOTT SEMPLE, ET AL.,
    Defendants.

No. 3:18-cv-967 (VAB)

## INITIAL REVIEW ORDER

Daniel Wine ("Plaintiff"), *pro se*, currently incarcerated at MacDougall Walker Correctional Institution ("MacDougall Walker") in Suffield, Connecticut, filed a civil Complaint under 42 U.S.C. § 1983, Compl., ECF no. 1, against Commissioner of the Department of Correction ("DOC") Scott Semple and MWCI Warden William Mulligan for violating his Fourth and Fourteenth Amendment rights. Compl. Mr. Wine seeks damages against both Defendants in their individual and official capacities. *Id*; Mot. to Am. Compl., ECF No. 11. On June 22, 2018, Magistrate Judge William I. Garfinkel granted Mr. Wine's motion to proceed *in forma pauperis*. *See* Order Granting Mot. for Leave to Proceed In Forma Pauperis, ECF No. 9. On September 14, 2018, Mr. Wine filed a motion for preliminary injunctive relief against Warden Mulligan. Mot. for Prelim. Inj. Relief, ECF No. 10. Mr. Wine requested a status update on that motion on October 15, 2018. Letter motion re: Mot. for Prelim. Injunct., ECF No. 12.

For the following reasons, the Complaint is **DISMISSED** without prejudice subject to amendment. The motion for leave to amend the complaint is **DENIED AS MOOT**. The motion for preliminary injunctive relief is **DENIED**. The Court advises the Plaintiff that if he fails to file

an amended complaint in accordance with the instructions in this Order, within thirty (30) days of the date of this Order, the case will be dismissed with prejudice.

## I. FACTUAL ALLEGATIONS

On April 24, 2017, Warden Mulligan wrote and distributed a written memorandum to all MacDougall Walkerstaff and inmates stating "that, effective immediately, when staff are delivering incoming legal mail they shall retain the envelope/envelopes. (The inmate does not get to keep the envelope/envelopes.)" Compl. ¶ 7; Pl.'s Ex. A (ECF No. 1) at 6. The memo also provided that photocopies of the incoming envelope can be made should an inmate need the return the address. Pl.'s Ex. A. During one of Warden Mulligan's facility tours, Mr. Wine asked him about the new policy, specifically how the policy could be legal if "the enclosure is [the] private property of the person [to whom] it is addressed." Compl. ¶ 9. Mr. Wine also contended that the policy did not comply with DOC Administrative Directive 10.7. *Id.* at ¶ 10. According to Mr. Wine, Warden Mulligan responded that it was his policy and that there were no exceptions. *Id.* at ¶ 11. The new policy could permit correction officers to take inmate legal documents during cell searches because the documents are no longer kept in envelopes marked "privileged" or "confidential." *Id.* at ¶ 13.

On January 19, 2018, Mr. Wine wrote to the Admitting and Processing ("A&P") room asking for a box in which to store his legal documents, but the request was denied. Compl. ¶ 14. He followed up with a letter to Deputy Warden Roach, asking for boxes to store his legal paperwork because Warden Mulligan's new policy prevents him from organizing all of it. *Id.* at ¶ 15; Pl.'s Ex. D, ECF No. 1, at 17. Mr. Wine also submitted an informal inmate request and administrative grievances regarding the matter and spoke with an attorney in the Inmate Legal

2

Aid Program ("ILAP"). Compl. ¶¶ 17-19. The ILAP attorney informed Mr. Wine that Commissioner Semple had assured her that all inmates would "receive[] new replacement enclosures." *Id.* at ¶ 21. Thereafter, Mr. Wine asked for a replacement "enclosure" from his unit counselor but was told that it was not facility policy to provide such items. *Id.* at ¶ 22.

## I. STANDARD OF REVIEW

A court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. It is well-established, however, that *pro se* complaints "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

## II. DISCUSSION

Mr. Wine claims that the mail policy, instituted by Warden Mulligan and permitted by Commissioner Semple, and the denial of boxes or "enclosures" for his legal papers violate his

rights under the Fourth and Fourteenth Amendments to the United States Constitution. He has failed to state a plausible claim, however, under either constitutional amendment.

A. **Fourth Amendment Search**

Mr. Wine has alleged a violation of his Fourth Amendment rights against unreasonable search and seizure. The Court finds that Mr. Wine has failed to state a sufficient Fourth Amendment claim upon which relief may be granted.

The Fourth Amendment protects against unreasonable searches and seizures. *Katz v. United States*, 389 U.S. 347, 353, 88 S. Ct. 507, 512, 19 L. Ed. 2d 576 (1967). The Fourth Amendment governs when the person has an actual or subjective expectation of privacy and that expectation is one that society recognizes as reasonable. *Id.* at 361. If those conditions are satisfied, the Court must determine whether the search or seizure at issue was reasonable. *Id.*

It is well-established that prisoners have limited, if any, reasonable expectations of privacy because of their confinement status. *See Hudson v. Palmer*, 468 U.S. 517, 524-30, 104 S. Ct. 3194, 3199 et seq., 82 L. Ed. 2d 393 (1984) (loss of privacy is an inherent incidence of confinement); *United States v. Roy*, 734 F.2d 108, 111 (2d Cir. 1984) (legitimate privacy expectations "severely curtailed" during incarceration). Courts in the Second Circuit have routinely held that an inmate's limited expectation of privacy in his or her prison correspondence must yield to the legitimate penological interests of the prison facility. *See Dillhunt v. Theriault*, No. 9:07-cv-0412 (GTS/DEP), 2009 WL 4985477, *10 (N.D.N.Y. Dec. 15, 2009). "[T]he interception of a defendant's prison correspondence does not violate that individual's . . . Fourth Amendment right[] if prison officials had 'good' or 'reasonable' cause to inspect the mail." *United States v. Felipe*, 148 F.3d 101, 108 (2d Cir. 1998); *see also United States v. Workman*, 80

4

F.3d 688, 699 (2d Cir. 1996); *Correa v. McLeod*, No. 3:17-cv-1059 (VLB), 2017 WL 2962884, *2 (D. Conn. Jul. 11, 2017). In determining whether a restriction on prison correspondence is reasonable, the Court must consider:

> (1) whether there is a rational connection between the restriction and the legitimate governmental interest used to justify it; (2) whether alternative avenues of exercising the right remain open to the inmate; (3) whether accommodation of the right will have an adverse impact on guards, other inmates, and prison resources generally; and (4) whether obvious, easy alternatives to the restriction exist.

*Dillhunt*, 2009 WL 4985477, *10 (quoting *Purnell v. Lord*, 952 F.2d 679, 683 (2d Cir. 1992).

"[T]here is no question that prison officials may open incoming mail to ensure that no contraband is contained in the correspondence." *Word v. Croce*, 169 F. Supp.2d 219, 228 (S.D.N.Y. 2001) (quoting *Webster v. Mann*, 917 F. Supp. 185, 187 (W.D.N.Y. 1996)); *see also Savage v. Snow*, 575 F. Supp. 828, 836 (S.D.N.Y. 1983) (prison officials did not violate inmate's Fourth Amendment protection by inspecting or perusing mail). Inmates, however, have a greater expectation of privacy in legal correspondence. *See Word*, 169 F. Supp.2d at 228. Thus, courts in this Circuit have permitted inspection of an inmate's legal mail, but only when the inmate is present during inspection. *Id.*

In this case, Mr. Wine's allegations fall short of a plausible Fourth Amendment claim. Mr. Wine challenges a policy that does not give DOC employees any additional authority to search or inspect inmate correspondence; it only prevents inmates from keeping the envelopes that contained their correspondence. Although Mr. Wine alleges that the new policy facilitates "a practice of [correction officers] taking legal documents during cell searches," this allegation is conclusory rather than factual. Mr. Wine has not alleged that Defendants are confiscating and/or reading his legal mail. In enacting the policy, moreover, Defendants have provided inmates with

a reasonable alternative—Defendants may photocopy envelopes in the event that inmates require return addresses. Pl.'s Ex. A. Because Mr. Wine alleges neither an expansion of correction officers' search powers nor an unlawful search of his mail, the Court concludes that Mr. Wine has failed to state a claim that he was subjected to an unreasonable search or seizure of his property.

### B. Fourteenth Amendment Due Process

Mr. Wine also challenges the envelope policy and the denial of boxes and "enclosures" for his legal paperwork as a violation of due process under the Fourteenth Amendment. Although not clearly stated, Mr. Wine appears to claim that Defendants' actions are interfering with his constitutional right to access the courts. The Court finds that Mr. Wine has failed to state a Fourteenth Amendment claim upon which relief may be granted.

"Prisoners have a constitutional right of access to the courts that may not be unreasonably obstructed by the actions of prison officials." *Baker v. Weir*, No. 16 Civ. 1066 (JAM), 2016 WL 7441064, *2 (D. Conn. Dec. 27, 2016) (citing *Washington v. James*, 782 F.2d 1134, 1138 (2d Cir. 1986)). The prisoner's right of access to the courts is rooted in the constitutional guarantees of equal protection and due process. *Avent v. New York*, 157 F. App'x 375, *1 (2d Cir. 2005). "[T]o state a claim for denial of access to the courts, a [prisoner] must demonstrate that he suffered an actual injury . . . that is, he must allege that [officials'] conduct deprived him of an opportunity to press some nonfrivolous, arguable cause of action in court." *Baker*, 2016 WL 7441064, *2. "[The prisoner] must allege not only that the [official's] alleged conduct was deliberate and malicious, but also that the [official's] actions resulted in actual injury to the [prisoner] such as the dismissal of an otherwise meritorious legal claim." *Davis v. Goord*, 320

F.3d 346, 351 (2d Cir. 2003) (quoting *Cancel v. Goord*, No. 00 Civ. 2042 (LMM), 2001 WL 303713, at \*4 (S.D.N.Y. Mar. 29, 2001)). "[T]he injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis v. Casey*, 518 U.S. 343, 354, 116 S. Ct. 2174, 2181, 135 L. Ed. 2d 606 (1996). The underlying claim must involve a challenge to the conviction for which the prisoner was incarcerated, an action under 42 U.S.C. § 1983, or some other form of challenge to the prisoner's sentence or conditions of confinement. *See id.* at 354-55.

"[I]nterference with legal documents, particularly with legal mail containing attorney-client communications, 'implicates a prison inmate's right to access to the courts . . . as guaranteed by the . . . Fourteenth Amendment[].'" *Abascal v. Fleckenstein*, No. 06-cv-349S (WMS), 2012 WL 638977, \*4 (W.D.N.Y. Feb. 27, 2012) (quoting *Davis*, 320 F.3d at 351); *see also Washington*, 782 F.2d at 1138-39 (plaintiff's allegation that correction officer opened mail without permission reasonably interpreted as allegation of intentional interference with right of access to court). The mere possibility of interference with legal documents, however, is insufficient to state a claim for relief.

Mr. Wine has not alleged that the new envelope policy or the denial of boxes or "enclosures" for his legal paperwork has caused him actual injury. He has not alleged that the new policy led to the dismissal of an otherwise meritorious legal claim. *See Gardner v. Rivera*, 535 F. Supp.2d 430, 432 (S.D.N.Y. 2008) (allegation that legal mail was opened or temporarily withheld from inmate insufficient to show denial of right to access courts under Fourteenth Amendment). Without any showing of actual injury, Mr. Wine cannot state a plausible Fourteenth Amendment claim. The Court therefore concludes that Mr. Wine has not sufficiently pled a violation of his right to due process under the Fourteenth Amendment.

### C. Leave to Amend to Name Defendants in Their Official Capacities

On October 2, 2018, Mr. Wine moved to amend or correct his Complaint to name Defendants in their official capacities. Construing this request liberally and interpreting it to raise the strongest arguments it suggests, *Sykes*, 723 F.3d at 403, the Court finds that Mr. Wine is alleging that a DOC custom or policy, enacted by Defendants, violated his constitutional rights under §1983 of the Civil Rights Act. 42 U.S.C. §1983. The Court finds Mr. Wine's Motion to Amend moot, as Mr. Wine has failed to allege any plausible constitutional violations.

Section 1983 of the Civil Rights Act of 1871 provides an avenue of redress for "any citizen of the United States or other person within the jurisdiction" deprived of Constitutional or statutory rights by a person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory…" 42 U.S.C. §1983. To prevail on a §1983 claim, a plaintiff must establish that either: (1) an individual defendant, acting under color of a statute, etc., was personally involved in the violation of his or her rights, *Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). *See also*, *Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 2021, 56 L. Ed. 2d 611 (1978). *Muzio v. Incorporated Village of Bayville*, 2006 WL 39063, at * 4 (E.D.N.Y. January 3, 2006) (that a complaint that does not allege personal involvement by a human defendant is fatally facially defective) (citing *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987) (internal quotations and citations omitted)), or (2) a government institution had a custom or policy, enacted by an agent of the institution, that deprived the plaintiff of his or her rights. *Monell*, 436 U.S. at 659, 690 ("Our analysis of the legislative history of the Civil Rights Act of 1871 compels the conclusion that Congress did intend municipalities and other local government units to be

included among those persons to whom § 1983 applies . . . . On the other hand . . . . a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.")

For institutional defendants, an "isolated instance of unlawful conduct by local public employees" is insufficient to establish liability. *Brown v. City of New York*, 306 F. Supp. 2d 473, 477 (S.D.N.Y. 2004) (*citing Monell*, 436 U.S. at 694). Further, institutional defendants cannot be held liable for § 1983 deprivations under the doctrine of *respondeat superior*. *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (aff'd order granting partial summary judgment). A plaintiff therefore is required to prove five elements: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the local institution caused the constitutional injury. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–91. "The fifth element—the "official policy" element—can only be satisfied where a plaintiff proves that a "municipal [or other local institution's] policy of some nature caused a constitutional tort." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008), citing *Monell* at 691, 98 S.Ct. 2018. Courts construe the official policy requirement to encompass unofficial customs and practices. Still, a plaintiff must show that "a specific… policy, practice or custom" resulted in the deprivation of his or her rights. *See Brown*, 306 F. Supp. 2d at 477, citing *Monell*, 436 U.S. at 694. In short, a plaintiff has the burden to prove that the government institution was somehow at fault for his injury. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 810 (1985); *Monell*, 436 U.S. at 690-91.

While Mr. Wine has articulated specific DOC policies—the newly-instituted envelope policy and DOC's failure to provide inmates with boxes or "enclosures" for their legal mail—he

9

has failed to satisfy the remainder of the §1983 custom or policy test. To prevail under this second prong of §1983, Mr. Wine would need to allege that his constitutional or statutory rights had been violated, which he has not done. He also would need to draw a causal link between the offending policy and his injuries, which he also has not done. Because the Court is dismissing Mr. Wine's Complaint for failing to state a plausible claim for relief under the Fourth or Fourteenth Amendments, the Court denies as moot Mr. Wine's motion to amend his Complaint to name Defendants in their official capacities.

### III. MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

In support of his motion for preliminary injunctive relief, Mr. Wine alleges that a correctional officer, Katherine Barnes, is "using [his] copyright trade name/trademark" without his authorization. Mot. for Prelim. Inj. Relief at 1. He also alleges that other correctional officers threatened to place him in segregation if he attempted to contact Ms. Barnes again. *Id.* at 2. He requests mandatory injunctive relief against Warden Mulligan to order the warden's subordinates to cease use of Plaintiff's "copyright trade name/trademark" and therefore tampering with his legal property. *See id.* at 4-5. Mr. Wine's trademark allegations against DOC employees are unsupported and implausible. Mr. Wine's request for injunctive relief also appears unrelated to his Fourth or Fourteenth Amendment allegations. Finding no credible basis in law or fact for a preliminary injunction, the Court denies Mr. Wine's request for injunctive relief.

### IV. CONCLUSION

For the reasons discussed above, the Complaint is **DISMISSED without prejudice**. Relatedly, Mr. Wine's motion for leave to amend his complaint is **DENIED as MOOT**. If Mr. Wine believes he can state a plausible Fourth or Fourteenth Amendment claim based on the

precedent discussed above, he may file an amended complaint within thirty (30) days of the date of this Order.

Any amended complaint must contain specific factual allegations showing how the Defendants are violating his constitutional right to privacy. *See* Sec. III, A., *supra* (citing *Felipe*, 148 F.3d 101 and *Word*, 169 F. Supp.2d 219). As for the Fourteenth Amendment claim, the amended complaint must allege facts showing that Mr. Wine suffered an actual, cognizable injury as a result of the Defendants' conduct. Failure to file an amended complaint in accordance with these instructions within thirty (30) days of the date of this Order will result in dismissal of the case with prejudice.

The motion for preliminary injunctive relief is **DENIED without prejudice.**

**SO ORDERED** at Bridgeport, Connecticut, this 18th day of October, 2018.

    /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE