# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

DANIEL WINE,
    *Plaintiff*,

v.

SCOTT SEMPLE, *et al.*,
    *Defendants.*

No. 3:18-cv-967 (VAB)

## INITIAL REVIEW ORDER OF AMENDED COMPLAINT

On June 7, 2018, Daniel Wine ("Plaintiff"), *pro se* and currently incarcerated at MacDougall-Walker Correctional Institution ("MWCI") in Suffield, Connecticut, filed a Complaint under 42 U.S.C. § 1983 against Scott Semple, the Commissioner of the Department of Correction ("DOC"), and MWCI Warden William Mulligan for violating Mr. Wine's Fourth and Fourteenth Amendment rights. Compl., ECF No. 1 (June 7, 2018).

The Court dismissed the Complaint without prejudice for failure to state a plausible claim for relief under 28 U.S.C. § 1915A(b)(1), and permitted Mr. Wine one opportunity to amend the Complaint with additional allegations to cure the factual deficiencies of the Fourth and Fourteenth Amendment claims. Initial Review Order, ECF No. 14 (Oct. 18, 2018).

On November 1, 2018, Mr. Wine filed an Amended Complaint in accordance with the Court's instruction. Am. Compl., ECF No. 17 (Nov. 1, 2018). After review of the factual allegations stated therein, the Court concludes that Mr. Wine has still failed to state a plausible constitutional claim.

For the following reasons, the Amended Complaint therefore is **DISMISSED**.

I.  **BACKGROUND**

On April 24, 2017, officials at MWCI allegedly posted a memorandum throughout the facility entitled, "Incoming Legal Mail Memo." Am. Compl. ¶ 7. The memorandum stated that all legal mail enclosures allegedly would be retained by MWCI staff, but that a photocopy of the enclosure could be provided at the inmate's request if a return address was needed. *Id.* ¶ 8.

Mr. Wine allegedly asked Warden Mulligan during one of his facility inspections whether this new policy was legal because the enclosure of the mail is the sole property of the addressee. Am. Compl. ¶ 9. He also allegedly informed Warden Mulligan that the new policy did not conform to DOC Administrative Directive 10.7.[1] *Id.* ¶ 10. Warden Mulligan allegedly replied that it was his new policy and that there would be no exceptions. *Id.* ¶ 11.

At some point, Mr. Wine received an allegedly threatening letter in the mail. Am. Compl. ¶ 13. The envelope for the letter allegedly contained an attorney's return address, but the letter was not sent from that address. *Id.* ¶ 14. Mr. Wine suspects that a letter was sent from his former brother-in-law or a person of interest in his criminal habeas proceeding.[2] *Id.* at ¶ 15. Although Mr. Wine allegedly knows the true identity of this person, he will not disclose his name until an investigation can show that he was, in fact, the sender. *Id.* ¶¶ 16-18. He believes that a DNA test of the seal on the envelope would reveal that this person sent the threatening letter. *Id.* ¶¶ 21-22.

---

[1] DOC Administrative Directive 10.7 outlines the policies and procedures for all inmate communications. State of Connecticut, Department of Correction, Administrative Directive 10.7, https://portal.ct.gov/-/media/DOC/Pdf/Ad/ad1007pdf.pdf?la=en.

[2] Judicial records show that Mr. Wine was convicted in October of 2015 of multiple counts of first-degree sexual assault, attempted sexual assault, and risk of injury to a minor. *State v. Wine*, No. TTD-CR14-0104934-T, State of Conn. Judicial Branch, https://www.jud2.ct.gov/crdockets/CaseDetailDisp.aspx?source-=Pending&Key=b86b6421-1be9-4ab5-8942-f0823afa4cb8. He has a habeas corpus proceeding pending in state court. *Wine v. Comm'r of Corr.*, No. TSR-CV16-4007889-S, State of Conn. Judicial Branch, http://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=TSRCV164007889S.

Mr. Wine, however, is unable to submit the envelope for DNA testing because MWCI staff allegedly disposed of the envelope. *Id.* ¶ 23.

On August 9, 2018, documents allegedly sent from an investigator addressed to Mr. Wine arrived at MWCI. Am. Compl. ¶ 25. MWCI staff allegedly opened, read, and rejected the mail as "unauthorized information." *Id.* ¶ 26. Mr. Wine allegedly obtained the documents through a Freedom of Information ("FOI") request, but the documents allegedly were redacted. *Id.* ¶ 27.

The documents allegedly contain "critical" information related to Mr. Wine's state habeas proceeding and "could [also] help" in a pending civil action. *Id.* ¶ 28. Mr. Wine filed a grievance regarding the interception of the mail, and Warden Mulligan allegedly replied that correspondence from investigators are not considered privileged material. *Id.* ¶ 29. Mr. Wine contends that Mulligan's response directly conflicts with DOC Administrative Directive 10.7(3)(H), which defines "any written correspondence addressed to or received from attorneys . . . includ[ing] organizations providing legal services to inmates" as "[p]rivileged communication." *Id.* ¶ 31.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district

court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage nonetheless is distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d

4

399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants).

## III. DISCUSSION

In his amended complaint, Mr. Wine claims that the mail policy instituted by Warden Mulligan and permitted by Commissioner Semple violates his Fourth, Fifth, and Fourteenth Amendment rights. Am. Compl. ¶¶ 33-36.

As discussed below, his new claim, the Fifth Amendment claim, will be dismissed and, as for the other claims, Mr. Wine has failed to cure the factual deficiencies noted by the Court in its Initial Review Order.

### A. The Fifth Amendment Claim

Mr. Wine did not raise a Fifth Amendment claim in his initial Complaint. Nevertheless, the Fifth Amendment applies to the federal government, not the states. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'").

Accordingly, the Fifth Amendment claim is dismissed.

### B. The Fourth Amendment Claim

The Fourth Amendment protects against unreasonable searches and seizures. *Katz v. United States*, 389 U.S. 347, 353 (1967). The Fourth Amendment governs when the person has an actual or subjective expectation of privacy and that expectation is one that society recognizes

as reasonable. *Id.* at 361. If those conditions are satisfied, then the Court must determine whether the search or seizure at issue was reasonable. *Id.*

It is well-established that prisoners have limited, if any, reasonable expectations of privacy because of their confinement status. *See Hudson v. Palmer*, 468 U.S. 517, 524-30 (1984) (loss of privacy is inherent incidence of confinement); *United States v. Roy*, 734 F.2d 108, 111 (2d Cir. 1984) (legitimate privacy expectations "severely curtailed" during incarceration). Courts in the Second Circuit have routinely held that an inmate's limited expectation of privacy in his prison correspondence would yield to the legitimate penological interests of the prison facility. *See Dillhunt v. Theriault*, No. 9:07-CV-0412 (GTS/DEP), 2009 WL 4985477, at *10 (N.D.N.Y. Dec. 15, 2009). "[T]he interception of a defendant's prison correspondence does not violate that individual's . . . Fourth Amendment right[] if prison officials had 'good' or 'reasonable' cause to inspect the mail*." United States v. Felipe*, 148 F.3d 101, 108 (2d Cir. 1998); *see also United States v. Workman*, 80 F.3d 688, 699 (2d Cir. 1996); *Correa v. McLeod*, No. 3:17-CV-1059 (VLB), 2017 WL 2962884, at *2 (D. Conn. Jul. 11, 2017).

In determining whether a restriction on prison correspondence is reasonable, the Court must consider: (1) whether there is a rational connection between the restriction and the legitimate governmental interest used to justify it; (2) whether alternative avenues of exercising the right remain open to the inmate; (3) whether accommodation of the right will have an adverse impact on guards, other inmates, and prison resources generally; and (4) whether obvious, easy alternatives to the restriction exist. *Dillhunt*, 2009 WL 4985477, at *10 (quoting *Purnell v. Lord*, 952 F.2d 679, 683 (2d Cir. 1992)).

"[T]here is no question that prison officials may open incoming mail to ensure that no contraband is contained in the correspondence." *Word v. Croce*, 169 F. Supp. 2d 219, 228 (S.D.N.Y. 2001) (quoting *Webster v. Mann*, 917 F. Supp. 185, 187 (W.D.N.Y. 1996)); see also *Savage v. Snow*, 575 F. Supp. 828, 836 (S.D.N.Y. 1983) (prison officials did not violate inmate's Fourth Amendment protection by inspecting or perusing mail). Inmates, however, have a greater expectation of privacy in legal correspondence. *See Word*, 169 F. Supp. 2d at 228. Thus, courts in this Circuit have permitted inspection of an inmate's legal mail but only when the inmate is present during inspection. *Id.*

The Court dismissed Mr. Wine's Fourth Amendment claim because the new policy at MWCI did not give DOC officials any additional authority to search or inspect privileged correspondence. Initial Review Order at 5. There were no allegations that MWCI officials were confiscating, reading, or destroying Mr. Wine's legal mail, and the policy provided for a reasonable alternative by permitting inmates to request photocopies of the retained envelopes. *Id.* at 5-6.

In his Amended Complaint, Mr. Wine alleges facts regarding two specific incidents which he claims demonstrates the unconstitutionality of the envelope policy: the retention of the envelope containing the threatening letter and the opening of his correspondence sent from an investigator.

Neither of the incidents alleged demonstrate how the new policy at MWCI, which only prohibits inmates from obtaining envelopes, violates Mr. Wine's Fourth Amendment protection against unreasonable searches and seizures. Under DOC Administrative Directive 10.7(4)(G), DOC officials have authority to open and inspect all incoming inmate correspondence for

contraband and money. The new policy at MWCI does not give DOC officials any greater authority to inspect inmate mail than that which is already permitted by DOC regulations.

Mr. Wine's claim that Defendants are interfering in a potential criminal investigation by confiscating and/or destroying the envelope and any DNA evidence it contains is entirely speculative. But there are no allegations that a criminal investigation exists, or should exist. Certainly, Mr. Wine has no legal authority to compel a criminal investigation. *See Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (the authority to prosecute crimes or investigate criminal charges rests solely with prosecutors); *Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[I]n American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"); *Osuch v. Gregory*, 303 F. Supp. 2d 198, 194 (D. Conn. 2004) ("An alleged victim of a crime does not have a right to have the alleged perpetrator investigated or criminally prosecuted."). In the absence of these critical factual allegations, Mr. Wine cannot have a viable claim that Defendants are actively interfering in a criminal investigation, much less provide a basis for a Fourth Amendment violation.

As for the allegations regarding the investigator's letter, Mr. Wine has not shown any causal link between this action and the envelope policy established by Warden Mulligan. Moreover, there are no facts suggesting that either Warden Mulligan or then-Commissioner Semple were personally involved in the opening, reviewing, or redaction of the letter. *See* Initial Review Order at 8-9 (prisoner must allege facts showing personal involvement to state § 1983 claim). The fact that Warden Mulligan rejected Mr. Wine's grievance does not establish his personal liability. *See Jusino v. Mark Frayne*, No. 3:16-CV-961 (MPS), 2016 WL 4099036, at *5 (D. Conn. Aug. 2, 2016) (denial of grievance alone does not establish personal involvement of

8

supervisory official); *cf. McKenna v. Wright*, 386 F.3d 432, 437-38 (2d Cir. 2004) (questioning "whether an adjudicator's rejection of an adjudicator's rejection of an administrative grievance would make him liable for the conduct complained of[.]").

Accordingly, Mr. Wine has failed to state a plausible Fourth Amendment claim and the claim will be dismissed.

      C.      **The Fourteenth Amendment Due Process Claim**

"Prisoners have a constitutional right of access to the courts that may not be unreasonably obstructed by the actions of prison officials." *Baker v. Weir*, No. 3:16-CV-01066 (JAM), 2016 WL 7441064, at *2 (D. Conn. Dec. 27, 2016) (citing *Washington v. James*, 782 F.2d 1134, 1138 (2d Cir. 1986)). The prisoner's right of access to courts is rooted in the constitutional guarantees of equal protection of laws and due process. *Avent v. New York*, 157 F. App'x 375, at *1 (2d Cir. 2005). "[T]o state a claim for denial of access to the courts, a [prisoner] must demonstrate that he suffered an actual injury . . . that is, he must allege that [the officials'] conduct deprived him of an opportunity to press some nonfrivolous, arguable cause of action in court." *Baker*, 2016 WL 7441064, at *2.

"[The prisoner] must allege not only that the [official's] alleged conduct was deliberate and malicious, but also that the [official's] actions resulted in actual injury to the [prisoner] such as the dismissal of an otherwise meritorious legal claim." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (quoting *Cancel v. Goord*, No. 00-CIV-2042 (LMM), 2001 WL 303713, at *4 (S.D.N.Y. Mar. 29, 2001)). "[T]he injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis v. Casey*, 518 U.S. 343, 354 (1996). The underlying claim must involve a challenge to the conviction for which the prisoner was incarcerated, an action under 42

9

U.S.C. § 1983, or some other form of challenge to the prisoner's sentence or conditions of confinement. *See id.* at 354-55.

"[I]nterference with legal documents, particularly with legal mail containing attorney-client communications, 'implicates a prison inmate's right to access to the courts . . . as guaranteed by the . . . Fourteenth Amendment[].'" *Abascal v. Fleckenstein*, No. 06-CV-349S (WMS), 2012 WL 638977, at *4 (W.D.N.Y. Feb. 27, 2012) (quoting *Davis*, 320 F.3d at 351); *see also Washington*, 782 F.2d at 1138-39 (plaintiff's allegation that correction officer opened mail without permission reasonably interpreted as allegation of intentional interference with right of access to court). The mere possibility of interference with legal documents, however, is insufficient to state a claim for relief.

Mr. Wine claims that the envelope policy at MWCI violates his Fourteenth Amendment right to due process because it resulted in the destruction of "evidence that could have made an impact on [his] [pending] civil and habeas [cases]." Am. Compl. ¶ 35. He also alleges that, as a result of the policy, he now must purchase envelopes through the commissary in order to keep his legal paperwork in order. *Id.* ¶ 33. These allegations do not sufficiently state a Fourteenth Amendment violation.

The Court dismissed Mr. Wine's Fourteenth Amendment claim as stated in his initial complaint because there were no facts showing that Mr. Wine suffered an actual injury. *See* Initial Review Order at 7 (citing *Gardner v. Rivera*, 535 F. Supp. 2d 430, 432 (S.D.N.Y. 2008) (allegation that legal mail was opened or temporarily withheld from inmate insufficient to show denial of right to access courts)). The fact that the retention and destruction of the envelope "could have" affected his pending civil and habeas matters does not state an actual cognizable

injury, nor does the obligation to purchase envelopes through the commissary.

Absent any allegations that the envelope policy did, in fact, impact his pending legal proceedings, Mr. Wine cannot prevail on a Fourteenth Amendment claim.

Accordingly, his Fourteenth Amendment claim will be dismissed.

**IV.     CONCLUSION**

Based on the foregoing, Mr. Wine's Amended Complaint fails to cure the factual deficiencies of his Fourth and Fourteenth Amendment claims as stated in the Initial Review Order, and his new claim under the Fifth Amendment fails as well. Therefore, the case is hereby dismissed with prejudice.

The Clerk of Court respectfully is directed to enter judgment in favor of Defendants and close this case.

**SO ORDERED** at Bridgeport, Connecticut this 18th day of March, 2020.

                                                                  /s/ Victor A. Bolden
                                                                  Victor A. Bolden
                                                                  United States District Judge